UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 11-77-GWU

SHARON THOMAS,                                                           PLAINTIFF,

VS.                       **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,              DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th Cir. 1990). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Crouch, 909 F.2d at 855.

1

11-77  Sharon Thomas

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. § 404.1520.

The step referring to the existence of a "severe" impairment has been held to be a de minimis hurdle in the disability determination process. Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986). An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless." Id., n.1.

Step four refers to the ability to return to one's past relevant category of work, the plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which

appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e);

3

however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. <u>Ibid</u>. In such cases, the agency may be required to consult a vocational specialist. <u>Dacron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Sharon Thomas, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of depression and borderline intellectual functioning. (Tr. 15). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ found that the plaintiff could perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 19-22). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether the plaintiff, a 36-year-old woman with marginal literacy and no work experience, could perform any jobs if she had no exertional limitations but did have a "seriously limited but not precluded" ability to deal with the public and perform detailed instructions. (Tr. 54-5). She would have a "limited but satisfactory" ability to follow work rules, relate to

4

coworkers, use judgment, interact with supervisors, deal with job stress, function independently, maintain attention and concentration, perform simple instructions, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability. (Id.). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 55).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence, or if there was an error of law. Although the plaintiff alleged disability beginning January 1, 2000, a previous application was denied in an ALJ decision of April 23, 2003 (Tr. 66-77) and affirmed by the undersigned on November 8, 2006. Thomas v. Barnhart, London Civil Action No. 05-661-GWU (E.D. Ky. Nov. 8, 2006). The ALJ in the present case declared the prior application administratively final and noted that the earliest possible date the plaintiff could be considered disabled was December 8, 2006, the date of filing of her current application. (Tr. 13).

Although much of the medical evidence concerns complaints of physical problems, the plaintiff's only issues are that the ALJ committed error in failing to find that she met the requirements of the Commissioner's Listings of Impairment (LOI) 12.05B and 12.05C.

> 12.05 *Mental retardation:* Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive

functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

*****

B.  A valid verbal, performance, or full scale IQ of 59 or less;

OR

C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

The plaintiff testified that she was in Special Education throughout high school, still had trouble reading and writing, could not understand letters she received from Social Security, and never held a job.  (Tr. 39).  Her mother stated that she was unable to count money, and could not follow the directions on a box of cake mix, but on the other hand, liked to read her Bible.  (Tr. 147-48).  Limited school records consist of a high school report card showing that the plaintiff graduated from Evarts High School in May, 1990, with a rank of 66 out of 96 students and a grade point average of 2.23.  (Tr. 150).

An intake form from the Comprehensive Care Center (CCC) in March, 2007 was prepared by Brittany Gilliam, the plaintiff's counselor, and notes that her intelligence was estimated to be in the average range.  (Tr. 623).

The plaintiff focuses on a consultative psychological examination by Jeanne Bennett, a psychologist, which took place on April 27, 2007. Mrs. Thomas claimed to be applying for disability benefits for the first time. (Tr. 606). She reported that she was a high school graduate and described herself as an average to below-average student who never repeated any grades, but who was in Special Education throughout school. (Tr. 607). She described herself as being able to take care of personal needs, do light housekeeping, and her activities included shopping three times a month, watching TV, visiting a friend, and attending church Saturday and Sunday. (Tr. 608). Dr. Bennett administered intelligence testing resulting in a verbal IQ of 60, a performance IQ of 67, and a full scale IQ even lower, at 59. (Tr. 609). Her grades on achievement testing were very low and Dr. Bennett concluded that she was functionally illiterate. (Tr. 610-11). Dr. Bennett felt that Mrs. Thomas put forth good effort on testing, that she met the diagnostic criteria for mild mental retardation, and opined that her intelligence was most likely developmental in origin, although she apparently had no records available for review. (Tr. 610).

A state agency psychologist, Dr. Jan Jacobson, reviewed the evidence following the submission of Dr. Bennett's report but discounted the IQ of 59, noting that by contrast Brittany Gilliam was a Master's level professional who had estimated the plaintiff as having an average IQ, and that the previous ALJ decision

had indicated that the plaintiff had put forth poor effort on IQ testing. Furthermore, the school records indicated borderline intellectual functioning. (Tr. 593).

Clearly, if the full scale IQ score of 59 were to be accepted as legitimate, the plaintiff would meet the requirements of 12.05B, without the necessity of even considering 12.05C. The ALJ discounted the low IQ scores, however, citing various grounds. He felt that the plaintiff's ability to maintain passing and average to above-average grades in a number of subjects without repeating any grades, and ranking 66 out of 96 in her high school class, even while in Special Education, was reflective of borderline intellectual functioning. (Tr. 20). She was also apparently able to complete forms and applications, write legibly, read the Bible, and work crossword puzzles. None of her treatment records from mental health professionals at CCC indicated mental retardation or even borderline intellectual functioning. Finally, the ALJ cited previous IQ testing, which is not contained in the current court transcript but was described in the prior administrative decision and in this court's Memorandum Opinion in 2006, as yielding invalid scores. (Tr. 70-71). Like Dr. Jacobson, the ALJ extrapolated the plaintiff's previous malingering on IQ testing and concluded that it rendered unreliable the results of her testing by Dr. Bennett. (Tr. 20).

The plaintiff argues that it was improper to impute malingering to Dr. Bennett's testing based on testing that was performed five years earlier, particularly

11-77 Sharon Thomas

in view of there being no mention of malingering in any other evaluation. However, it was still the plaintiff's responsibility to prove her own case. Even assuming that Dr. Bennett's scores were correct, the Sixth Circuit has held that Listing 12.00 will only be met if, in addition to a qualifying IQ score, the claimant's impairment satisfies the diagnostic description in the introductory paragraph. Foster v. Halter, 279 F.3d 348, 354 (6th Cir. 2001). In other words, the evidence must demonstrate or support onset of the impairment before age 22. The only direct evidence currently in the court transcript are the aforementioned high school grades, which a reasonable factfinder could have concluded are inconsistent with mental retardation.[1]

Moreover, the ALJ cited an extensive list of reasons for believing that the plaintiff's intellectual functioning was not as limited as Dr. Bennett proposed. In a published case, the Sixth Circuit quoted with approval a case from the Eighth Circuit stating that an ALJ should examine IQ test results to assure consistency with daily activities and behavior. Baker v. Commissioner of Social Security, 21 Fed. Appx. 313, 315 (6th Cir. 2001), citing Clark v. Apfel, 141 F.3d 1253, 1255 (8th Cir. 1998).

---

[1]There is a reference in the court's decision of November 8, 2006 to IQ testing in school records which were performed prior to age 16, not in the current transcript. It was noted that they were performed prior to age 16, when IQ scores stabilize, and were administered by persons with unknown credentials and were an unknown variety of IQ testing. Thus, the undersigned found that they did not support a finding that LOI 12.05C was satisfied.

11-77  Sharon Thomas

While there is some evidence of the plaintiff's activities being limited, such as her mother's statement that she could not follow the directions on a box of cake mix, it is hard to view such statements as being conclusive when at the same the time the mother was reporting that she liked to read the Bible.  (Tr. 147).  Likewise, it is surprising that the mental health professionals at the CCC, including her counselor and psychiatrist, would have made no mention of apparent mental retardation. Accordingly, even setting aside the issue of malingering on prior examinations, there is substantial evidence to support the ALJ's conclusion that the plaintiff had borderline intellectual functioning.

    The decision will be affirmed.

    This the 1st day of March, 2012.

Signed By:
*G. Wix Unthank*
**United States Senior Judge**